UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY M. PAWLAK | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. H-09-3277 |
| | § | |
| BBVA USA BANCSHARES INC. | § | |

## OPINION AND ORDER

Pending before the Court are Defendants Compass Bank, Banco Bilbao Vizcaya Argentarisa, S.A., BBVA USA Bancshares, Inc., and Compass Bancshares, Inc.'s (collectively, "Bank") motion to stay proceedings and compel arbitration (Docs. 15–16), as well as Plaintiff Jeremy M. Pawlak's ("Pawlak") response (Docs. 27–28), Defendants' reply (Doc. 29), Pawlak's surreply (Doc. 40), and Defendants' surreply (Doc. 43).  Upon review and consideration of this motion, the responses, replies, and surreplies thereto, the relevant legal authority, and for the reasons explained below, the Court finds Defendants' motion to stay proceedings and compel arbitration should be granted.

I.  Background and Relevant Facts

This is a consumer banking case in federal court as a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).  Pawlak opened his account with Texas State Bank ("TSB") in May 2006.  (Doc. 1, ¶ 17.)  In August 2008, TSB was acquired through a series of transaction and mergers and is now known as Compass Bank. (*Id.*)  Pawlak says he reasonably expected the Bank to post transactions in the chronological order in which they are received by the Bank.  (*Id.*, ¶ 19.)  However, Pawlak alleges that the bank routinely posted charges to his "account prior to posting the deposits for that day, creating

overdraft transaction where there should be none" and that the Bank intentionally posted the

charges in an "order designed to maximize the number of overdraft transactions and the number

of overdraft fees." (*Id.*)  For example, if the Bank received a number of charges, Pawlak alleges

that it posted the largest charge first, thereby increasing the likelihood that subsequent smaller

debits would each incur overdraft fees on an overdrawn account.  Pawlak claims that charging

"consumers' accounts in this manner, without adequate notice, is inherently deceptive, unfair,

and prohibited by state and federal law." (*Id.*, ¶ 21.)

On October 9, 2009, Pawlak, individually and on behalf of others similarly situated, filed

a class action complaint.  (Doc. 1.)  Pawlak brings claims for violations of the Texas Deceptive

Trade Practices & Consumer Protection Act ("TDTPA"), Texas Business and Commerce Code

§§ 17.41 through 17.63, breach of implied covenant of good faith and fair dealing, "abuse of

rights," unconscionablility, conversion, unjust enrichment and restitution.   (*Id.* at 19–29.)

Defendants move to stay the proceedings and compel arbitration.  (Doc. 15.)

II.  The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.

Courts follow a two part inquiry when determining whether to compel a party to arbitrate: (1)

whether the parties agreed to arbitrate, and (2) whether federal statute or policy renders the

claims nonarbitrable.  *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884,

886 (5th Cir. 2009).  If the arbitration agreement encompasses the claims and the party opposing

arbitration fails to prove its defenses, the court must compel arbitration and stay its own

proceedings.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).  The first inquiry

in determining whether to compel a party to arbitrate has two parts: (1) whether a valid

agreement to arbitrate exists, and (2) whether the dispute falls within that agreement.  *Dealer*

*Computer Servs.*, 588 F.3d at 886.  "Beyond this analysis, the courts generally do not delve

further into the substance of the parties' disputes."  *Id.* at 886–87.


III.  Discussion

Defendants point to the arbitration provision of the Deposit Account Agreement (the

"Agreement") contained in the Consumer Disclosure Booklet, which specifies that

> By opening or maintaining the account, you agree that if a dispute of any
> kind arises under this Agreement or relates to your account or any
> transactions involving your account, either you or we can choose to have
> that dispute resolved by binding arbitration.  **This arbitration provision
> limits your ability to litigate claims in court and your right to a jury
> trial.  You should review this section carefully.**  You will not have the
> right to participate as a class representative or member of any class of
> claimants for any claim subject to arbitration.  Arbitration is usually an
> informal proceeding in which disputes are decided by one or more neutral
> arbitrators who receive the evidence at a hearing and then issue a binding
> ruling in the form of an award.  You and we understand that discovery and
> other procedures in arbitration may be more limited than discovery in
> court proceedings and that the ability to modify, vacate, or appeal an
> award by an arbitrator(s) is limited.
>
> You and we agree, upon written demand made by you or us, to submit to
> binding arbitration all disputes, controversies, and claims, whether based
> in contract, fraud, tort, intentional tort, statute, regulation, constitution,
> common law, equity, or any other legal basis or theory, and whether
> preexisting, present, or future, that arise from or relate to this Agreement,
> the account, any transaction involving the account, or any advertisements,
> promotions, or oral or written statements related to this Agreement or the
> account, the relationships that result from this Agreement (including, to
> the fullest extent permitted by applicable law, relationships with third
> parties who are not parties to this Agreement or this arbitration provision),
> or the scope or enforceability of this Agreement (collectively, a "Claim").

(Doc. 16-9 at 21 (emphasis in original).)

However, this provision was not part of Pawlak's original banking agreement.  When Pawlak first opened his account with TSB in May, 2006, he signed a signature card containing "terms and conditions" printed on the back.  (Doc. 27, ¶ 2.)  Those "terms and conditions" included the provision that "from time to time [the Bank] may amend any term of this agreement."  (Doc. 16-2 at 2–3.)  When TSB was later acquired in August 2008, Compass Bank mailed a Consumer Disclosure Booklet, containing an amended Agreement with the arbitration provision, to all account holders.  Pawlak contends the Agreement was not properly amended and that, in any event, the arbitration provision in the amended Agreement is illusory, unconscionable, and unenforceable.  (Doc. 27, ¶¶ 2–4.)

The Court finds that the Compass Agreement was a valid amendment of the TSB contract.  Pawlak says that he "never read a copy of the disclosure booklet," but does not dispute receiving it.  (Doc. 28 at 12.)  "Under ordinary contract principles, a party may be bound by an agreement even in the absence of a signature, provided that the actions of the parties reflect a mutual intent to be bound."  *Stinger v. Chase Bank, USA, N.A.*, 265 Fed. App'x 224, 227 (5th Cir. Feb. 7, 2008) (unpublished) (citing *Valero Ref., Inc. v. .M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987)).  By continuing to use his account after receiving the disclosure booklet, Pawlak demonstrated an intent to be bound by the terms of the amended Agreement and thus agreed to the arbitration provisions contained therein.  The Court further finds that Pawlak's claims fall squarely within the scope of the arbitration agreement.

IV.  Conclusion

Accordingly, the Court hereby ORDERS that Defendants motion to stay proceedings and compel arbitration (Doc. 15) is GRANTED.

SIGNED at Houston, Texas, this 4th day of August, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE